# EXHIBIT A

**WARREN LEX** LLP

2261 MARKET STREET NO. 606
SAN FRANCISCO CA 94114

TEL  +1 (415) 895 2940
FAX  +1 (415) 895 2964

August 31, 2021

**By Electronic Mail**

Jim Etheridge
Etheridge Law Group, PLLC
2600 E. Southlake Blvd., Suite 120/324
Southlake, Texas, 76092
jim@etheridgelaw.com

Re:   WSOU Investments LLC v. Google LLC, Nos. 20-571, 20-572, 20-573, 20-575, 20-576, 20-579, 20-580, 20-583, 20-584, 20-585 (W.D. Texas)

Dear Mr. Etheridge:

I write concerning Plaintiff WSOU's Objections and Responses to Defendant's First Set of Requests for Production of Documents (Nos. 1-10) and Plaintiff WSOU's Objections and Responses to Defendant's Second Set of Requests for Production of Documents (Nos. 11-35), and to address Plaintiff WSOU's production of documents in these matters.

As a preliminary matter, we note that although WSOU responds to many of the requests for production by agreeing to produce at least a limited set of documents, to date we have not received any corresponding production from WSOU. Aside from the public documents produced with WSOU's contentions in these matters, WSOU has produced fewer than 100 documents. At a minimum, please inform us when we can expect WSOU's production of documents it has agreed to produce in response to these requests.

The following are specific issues identified thus far in reviewing WSOU's objections and responses to Google's requests. These are not meant to be exhaustive.

**1.    Requests for Production (Nos. 1-10)**

These document requests seek documents and material relevant to standing and to any claim for damages. These requests clearly stated the documents Google seeks. WSOU has quantified its response to each request by stating "to the extent Plaintiff understands this request." To the extent that WSOU truly does not understand what is being sought by any request, please request a meet and confer so that we can make certain WSOU will not withhold anything responsive on this ground.

   **A.    Requests Nos. 1-4[1]**

Requests Nos. 1-4 call for all documents regarding any interest in the patents-in-suit, as well as in related patents or in WSOU itself. Given the lengthy history of the patents-in-suit, there are a myriad of responsive documents that WSOU should have in its possession, custody, or control. In particular, Request No. 4 also calls for at least all documents regarding actual or potential licensing or sale of the

---

[1] Requests Nos. 1-4 are identical across the cases.

patents-in-suit, including communications. In response, WSOU agrees to produce limited documents, including executed agreements and licenses to the patents-in-suit. To date, WSOU has not produced any such documents.

WSOU's proposed scope of response is insufficient. Drafts of agreements concerning the asserted patents that are not privileged are relevant and responsive, as are communications between and among WSOU and third parties. *See, e.g.*, *Two-Way Media LLC v. AT&T Inc.*, Case No. 09-476, 2011 WL 13113724, at *3 (W.D. Tex. Mar. 7, 2011) (finding "content of negotiations Two-Way Media conducted with third parties concerning the patents-in-suit" relevant, discoverable, and not subject to privilege). WSOU cannot unilaterally narrow its responses to these requests by stating that it will only produce materials that are in final form. Further, communications or negotiations by and between WSOU and a third party regarding the patents-in-suit are relevant to damages issues, and also have a bearing on standing. These are but examples of the categories of responsive documents we expect to be in WSOU's possession that are responsive to these requests, and not subsumed within the narrow category of materials WSOU has represented it will produce. Please agree to amend your responses and to provide a fulsome production in response to these requests.

### B. Requests Nos. 5-6[2]

Request No. 5 asks for all documents concerning agreements, due diligence documentation, and those documents concerning obligations by and between WSOU (as defined in the requests) and BP Funding Trust. In response, WSOU again states it will only produce publicly available prosecution history documents for each Patent-in-Suit and that no other such documents exist. This response is inadequate. BP Funding Trust was the owner of at least two patents in these cases, the '697 and '961 patent, until the month before WSOU filed these litigations. This request seeks, among other things, correspondence and agreements between WSOU and BP Funding Trust in advance of the formal assignment recorded with the PTO. If such documents exist, please confirm that WSOU will produce them. If not, please confirm specifically that no such documents exist. Further, to the extent that WSOU contends that any communications, due diligence documents, or draft agreements between BP Funding Trust and WSOU are privileged and being withheld on such basis, please identify the grounds for such privilege and provide a privilege log. Please agree to amend your responses and to provide a fulsome production in response to these requests.

Request No. 6 requests all documents regarding WSOU or its predecessors in interest, and its agreements or potential agreements with Nokia and its affiliated entities. WSOU has again improperly attempted to limit its production in response to this request to executed agreements and licenses alone. Negotiations between Nokia and WSOU or any WSOU-affiliated entity or predecessor in interest are relevant to the question of damages, and potentially non-infringement and invalidity in this case. Documents exchanged by and between the prior owner of the patents-in-suit and WSOU are relevant and WSOU must produce them. If WSOU is claiming that these documents are subject to privilege, please provide a privilege log and explain why these documents are privileged. *See In re IPCom GmbH & Co.*, KG, 428 F. App'x 984, 986 (Fed. Cir. 2011) (affirming the district court finding that no common interest privilege exists between a patentee and assignee because "any privilege was waived when [patentee] sold the portfolio to

---

[2] Requests Nos. 5 and 7 are identical across the cases (with the exception of a typographical error in Case No. 20-585 which misnumbered Request No. 6 as Request No. 7, and vice versa). For the purposes of this letter and discussing the identical responses to identical requests across cases, references to Request No. 6 also includes Request No. 7 in the -585 case.

[assignee]"). Please agree to amend your responses and to provide a fulsome production in response to these requests.

### C. Requests for Production (Nos. 7-10)[3]

The remainder of the requests in the first set of requests for production request all documents in WSOU's possession concerning specific public documents found in the file history of each respective patent in suit. For example, in the 571 case, Request No. 7 asks for all documents concerning the "Assignment of Assignors Interest"; Request Nos. 8 and 9 call for all documents concerning separate documents entitled "Patent Security Agreement"; and Request No. 10 for all documents concerning the "Release of Patent Security Interest."

Each of these requests ask for documents in WSOU's possession concerning assignment or security agreements to the patents-in-suit. For all of these requests, in all cases, WSOU's response is the same. First, it states that subject to objections it will produce publicly available information for the patent. Please confirm that WSOU has produced any such documents. Second, WSOU states that it will produce executed agreements and assignments related to the patent. We have not received any of these non-public documents. Please let us know when we can expect their production. In addition, to the extent WSOU contends there are privileged documents in its possession that are responsive to this request, please produce a privilege log in response. Finally, these requests call for more than executed agreements, assignments and publicly available documents. Documents and communications by and between parties executing the agreements referenced by these requests are also relevant and responsive. Please agree to amend your responses and to provide a fulsome production in response to these requests.

### 2. Requests for Production (Nos. 11-35)

Requests Nos. 11-35 are identical across these cases. On June 3, 2021, WSOU served one set of common responses to these requests in all cases. These are the requests and operative responses discussed herein.

### A. Requests Nos. 11, 19 and 20

These requests call for all documents related to the filing of the patents-in-suit (No. 11); the conception, development and reduction to practice of the patents-in-suit (No. 19); and prior art regarding the patents-in-suit (No. 20). WSOU has objected, and then responded that it has no documents responsive to these requests with the exception of publicly available information in response to Request No. 20. Please confirm that WSOU is not withholding any documents responsive to these requests on the basis of its objections, including that of privilege.

### B. Request No. 14

Request No. 14 reads as follows: "All documents concerning any financial analyses, opinions, evaluations, valuations, rankings, or ratings of the Patent-in-Suit, related patents, related applications, or

---

[3] Due to the numbering error in the -585 case, the corresponding requests to those discussed in this section are found in that matter at numbers 6 and 8. In addition, because these requests identify specific documents found in the prosecution history of the specific patent-in-suit, not all cases have all four requests. For example, the -572 and -579 case each only had 6 requests in the first set. To avoid confusion, in each of the 10 cases Google's second set of requests for production of documents begins with Request No. 11.

any intellectual property portfolio including the Patent-in-Suit, related applications, or related patents, including without limitation, all documents concerning any attempt to engage in any of the foregoing."

This request explicitly calls for documents relevant to any claim for damages. Yet, in response to Request No. 14, WSOU states that it has no non-privileged documents responsive to this request. As you know, Aqua Licensing was acting on behalf of WSOU when it approached Google about a license to patent portfolios inclusive of the patents-in-suit. Aqua provided documents from WSOU, including those within the scope of this request, to Google in connection with communications in 2017-2019.

Notably, in response to Google's subpoena to Aqua, the same firm that represents WSOU in these cases responded that "if any communications or agreements between Aqua and WSOU are relevant and discoverable, Google should seek them directly from WSOU without burdening Aqua." Email from T. Richins on Aug. 17, 2021. We are concerned that upon serving a subpoena for documents of this type on Aqua Licensing, Aqua's counsel (the same as WSOU's counsel) responded by directing Google to obtain such documents directly from WSOU.[4] Yet, WSOU claims it has no such documents.

We would be surprised to learn that WSOU does not have additional similar documents, such as evaluations of potential licensees, valuation of patents, and so forth. Similarly, and as discussed elsewhere in this letter, information shared between Alcatel, Nokia and WSOU (itself or its representatives) would likewise be responsive to this request. If WSOU is claiming privilege, at a minimum, please identify what privilege is being asserted by preparing and serving a privilege log so that we can understand what types of documents are being withheld in response to this request. Google also requests that WSOU amend its response to this request to state that it will be producing documents, and then produce them.

### C.     Request No. 15

Request No. 15 reads as follows: "All documents concerning any communications between you and any person (including Defendant) regarding the Patent-in-Suit, related patents, related applications, or any of your assets that include the Patent-in-Suit."

WSOU responds to this request by pretending to misunderstand it. Google is not requesting communications between WSOU and Google during the pendency of this litigation, but rather communications prior to the filing of this litigation between WSOU and Google, as well as communications at any time with any other person (aside from Google) regarding the Patent-in-Suit or related patents, applications or any assets that include the Patent-in-Suit. We know that these communications occurred, and this request calls for their production. To the extent that any such communications are confidential, WSOU can and must produce them under the protective order. To the extent that such communications are privileged, WSOU can and must produce a privilege log in response to this request. Please confirm that WSOU will produce documents in response to this request.

### D.     Request No. 16

Request No. 16 reads as follows: "All documents concerning any past or present decisions regarding whether to assert the Patent-in-Suit or related patents against any person (including Defendant), including

---

[4] The same concern—that WSOU and Aqua are playing bait and switch with their discovery obligations—arises based on the paucity of WSOU's production overall and in particular its response or lack thereof to not just Request No. 14 but also to at least Requests 15-17, 21, 23-24, 27, 32 34 and 35.

any advantages or disadvantages of such assertion, any evaluation of value or risk to you of such assertion, any likelihood of success of such assertion, and documents regarding the decision to file this litigation."

In response, WSOU objects and states that it has no non-privileged documents responsive to this request. Please confirm that there are no documents WSOU is withholding to this request based on its objections other than privilege. Please also confirm that you will produce a privilege log listing documents responsive to this request.

### E.     Request No. 17

Request No. 17 reads as follows: "All documents reflecting notice given by you to any person of the existence of the Patent-in-Suit or asserting that the Patent-in-Suit is infringed."

In response, and subject to its objections, WSOU refers Google to "Plaintiff's communications with Defendant, including Plaintiff's complaint and infringement contentions." This is an improper response. Please identify with specificity what communications you are referring to. If WSOU's response is limited to communications after filing of the complaint, it should say so clearly. Please amend your response accordingly.

### F.     Request No. 21

Request No. 21 reads as follows: "All documents created by you, on your behalf, or provided to you that compare any claim of the Patent-in-Suit or any related patent against any product, process, service, or industry standard, including any inspection, testing, evaluation, or analysis conducted by any person of any product, process, or service of Defendant for any purpose by you or on behalf of you."

WSOU responds to this request, subject to its objections, by refusing to produce "privileged documents relating to pre-suit investigation." Again, while some of WSOU's claims to privilege may well be substantiated, Google is entitled to evaluate these claims on a document by document basis through a privilege log. Google rejects any sweeping claim to privilege WSOU asserts over any responsive documents it conclusorily designates "relating to pre-suit investigation," and requests, at minimum, an appropriate privilege log.

### G.     Request No. 22

Request No. 22 reads as follows: "All documents regarding the marking or obligations to mark any products with the Patent-in-Suit or any related patent."

WSOU responds that it is entirely unaware of documents responsive to this at all, privileged or not. Please confirm that WSOU is not withholding any documents responsive to these requests on the basis of its objections, including that of privilege.

### H.     Request No. 23-24

Request No. 23 seeks documents sufficient to identify "all products, processes, or services that embody, practice, or infringe any claim of the" patent, and Request No. 24 calls for all documents relating to "objective indicia and/or secondary considerations of the obviousness or non-obviousness of the

Patent-in-Suit." WSOU responds to both of these requests by shifting the burden of production onto everyone but themselves, which is neither proper nor productive.

WSOU assumes its premise by pointing to Defendant's own documents as responsive to the Request. Google disputes the allegation that any of its products infringe the patent in suit. And, any supposed documents in Defendant's possession concerning, for example, the commercial success of any accused products are irrelevant to the WSOU's obligation to produce documents in WSOU's possession in response to Google's discovery requests. As to Request No. 24, it is entirely unclear what is meant by Plaintiff's reference to "publicly available prosecution documents relating to objective indicia and/or secondary considerations." To whatever extent the patentee provided documents to the PTO evidencing secondary considerations of obviousness for their alleged invention, Google is also entitled to any responsive documents underlying patentee's submissions to the PTO. *See In re IPCom GmbH & Co.*, KG, 428 F. App'x 984, 986 (Fed. Cir. 2011) (affirming the district court finding that no common interest privilege exists between a patentee and assignee because "any privilege was waived when [patentee] sold the portfolio to [assignee]"). Google requests that WSOU amend its response and produce any responsive documents that are not being withheld under a legitimate claim of privilege protection. Please also produce a privilege log listing documents responsive to this request.

      **I.**      **Request No. 26**

Request No. 26 seeks all documents relating to "any taxes paid, tax accounting, or tax assessments" regarding any patent in suit or any related patents, applications, or IP portfolios.

WSOU claims to have no non-privileged documents responsive to this request. We are unaware of a privilege that would apply broadly to this request to exclude these relevant financial records from production. Google requests that WSOU amend its response and produce all responsive documents accordingly. To the extent that any privileged documents exist, Google requests that WSOU also produce a privilege log listing documents responsive to this request so that it may evaluate and challenge the claims where appropriate.

      **J.**      **Request Nos. 27 & 32**

In Request No. 27, Google requests that WSOU produce all documents concerning the market or demand for the alleged inventions claimed in the Patent-in-Suit, including market studies, market surveys, forecasts, sales projections, market projections, competitive analyses, and analyst reports." Similarly, Request No. 32 seeks, among other things, all facts related to WSOU's contentions about "any benefit from the alleged inventions."

WSOU responds to both of these requests by referring Defendant to its own documents. WSOU's answers are non-responsive—either relevant documents exist within Plaintiff's control, or they do not. Please confirm that WSOU is not withholding responsive documents based on some purported assertion that it was not the original owner of the documents. To the extent the remaining response is coherent, it seems to suggest that Plaintiff is withholding some subset of responsive documents to be disclosed for the first time alongside its expert reports. This is improper. Please confirm that WSOU will be producing any and all responsive documents in its control or possession, regardless of when it intends to use the documents in litigation.

  **K.**  **Request Nos. 28 & 33**

Request No. 28 seeks documents "sufficient to show your financial condition, including, but not limited to, financial statements and projections, whether prepared for internal or external purposes." Please confirm that WSOU is contending that it retains no documents concerning its own financial condition. Request No. 33 calls for any documents regarding "valuation of any of your corporate assets, patents, or patent portfolio owned or controlled by You from 2014 to the present." Please likewise confirm that WSOU contends it has no documents relating to the valuation of its patent portfolio.

If indeed Plaintiff insists that responsive documents are being withheld on privilege grounds, please immediately prepare and serve a privilege log. Without a privilege log, Google is left unable to evaluate or appropriately challenge the designation of documents being withheld in response to this request. Google also requests that WSOU produce any documents that are not being withheld as privileged. If WSOU is withholding documents on other bases, then Google requests that WSOU identify the dispute using more than boilerplate objections. Until these issues are resolved, WSOU's response is insufficient and it must be amended.

  **L.**  **Request No. 29**

Request No. 29 seeks "all documents relating to any acceptable noninfringing alternative to any product, service, or process that embodies, practices, or infringes the Patent-in-Suit, including all documents relating to any contention that any non-infringing alternatives are not acceptable."

Google disputes WSOU's contention that this Request is at all incoherent. Please confirm that WSOU will withdraw this objection. That said, to the extent that privileged documents are responsive to this Request, Google expects that WSOU will produce a privilege log listing any such documents so that it may evaluate the propriety of the claims to privilege protection. Please confirm that such a log is imminently forthcoming.

  **M.**  **Request No. 34**

Request No. 34 reads as follows: "All documents relating to your current and historical licensing practices or policies, efforts to license your patents, and licenses to your patents, including without limitation the Patent-in-Suit or related patents."

By way of response to this request, WSOU points firstly to the operative complaint in this case, which, while an improper response in its own right, pales in comparison to WSOU's citation to "Plaintiff's communications with Defendant regarding efforts to license the patent." If Plaintiff knows of any such communications, then it must produce them in this litigation. Merely suggesting that Google self-reflect on a vague set of "communications" will not suffice in response to this Request. Google requests that WSOU agree to amend your response to this request and provide the responsive documents as requested.

  **N.**  **Request No. 35**

Request No. 35 requests all documents related to "license, agreement or actual or projected royalties for any license or other agreement relating to the Patent-in-Suit or related patents, in whole or in part, alone or in conjunction with any other patents or intellectual property."

While WSOU has agreed to produce documents in response to this Request, it purports to artificially cabin its response to the Request and limit the production to "executed licenses." This is patently not the full universe of responsive documents. This request calls for, among other things, documents evidencing the analyses conducted in relation to any agreement concerning the patents in suit, and any surrounding negotiations. Please confirm that you will amend your response to this request to reflect the correct scope of response, and confirm that such responsive documents will also be produced. Additionally, Google has yet to receive the production of "executed licenses" responsive to this request. Please let us know when we can expect their production.

*   *   *   *   *

As set forth above, we request a response to this correspondence that sets forth both when WSOU will be producing the documents it has already stated it will produce in response to Google's requests and WSOU's position with respect to Google's request for amended responses and further production. To the extent that WSOU does not agree to amend and produce documents as requested, please provide us with dates and times that WSOU is available to meet and confer on the issues raised herein.

In the meantime, I am available to discuss at your convenience.

Very Truly Yours,

Jennifer A Kash